**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| KEVIN D. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CV-207-TS |
| | ) | |
| WOLPOFF & ABRAMSON, LLP, | ) | |
| and CENTURION CAPITAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

The Defendants sent the Plaintiff letters and accessed his credit report in an attempt to collect a debt. During this same time, another debt collector was pursuing collection on the same charged-off account through state court litigation. The Plaintiff contends that the state court complaint is evidence that another company actually owned the debt and that the Defendants did not have a right to take collection action. The Defendants maintain that several bills of sale evidence the chain of title that culminated in their ownership of the debt and, therefore, their actions were permissible. The Plaintiff sued the Defendants using federal statutes that govern debt collection and consumer credit reports and also asserted violations of state laws. The Plaintiff's claims all hinge on the disputed issue of who owned the interest in the outstanding debt.

This matter is before the Court on Defendants Wolpoff & Abramson, LLP's, and Centurion Capital Corporation's Motion for Summary Judgment [DE 18], filed on July 21, 2006, and pro se Plaintiff Kevin D. Miller's Motion for Partial Summary Judgment [DE 30], filed on August 23, 2006. Also before the Court are two Motions to Strike evidence [DE 34, 41], filed by

the Plaintiff on August 25 and October 10, 2006, a Motion for Leave to File Second Amended

Complaint [DE 45] filed by the Plaintiff on May 30, 2007, and a Rule 56(g) Motion for

Sanctions Against Defendants Up to and Including Default Judgment in Favor of Plaintiff [DE

53], filed by the Plaintiff on August 15, 2007.


## BACKGROUND

The Plaintiff filed his Complaint on May 23, 2006, and Amended Complaint on May 30,

2006, alleging that Wolpoff & Abramson (W&A) and Centurion Capital Corporation

(Centurion), acting as "debt collectors," violated several provisions of both the Fair Debt

Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and the Fair Credit Reporting Act

(FCRA), 15 U.S.C. § 1681 *et seq.* The Plaintiff also alleges that the Defendants violated Illinois'

Consumer Fraud and Deceptive Business Practices Act and Illinois' Deceptive Trade Practices

Act. The Plaintiff's final claim is for invasion of privacy.

The Plaintiff challenges the lawfulness of the Defendants' actions with respect to their

attempts to collect a debt from him. He alleges that the Defendants violated his rights when the

law firm of W&A sent him letters demanding payment of a debt that had not been assigned to its

client, Centurion, and when W&A received his credit reports without a permissible purpose. The

Plaintiff contends that, because another debt collector sued the Plaintiff in Allen County Superior

Court claiming entitlement to the same debt, this is proof that Centurion did not own the debt.

On July 21, 2006, the Defendants answered the Amended Complaint and moved to

dismiss Counts IX and X of the Amended Complaint, the Illinois statutory claims, under Federal

Rule of Civil Procedure 12(b)(6) on the grounds that the Plaintiff did not have standing to assert

violations of Illinois law. On this date, the Defendants also moved for summary judgment on the

Plaintiff's federal claims and state invasion of privacy claim. On July 27, 2006, the Plaintiff

moved, pursuant to Rule 56(f), to "Continue/Refuse Defendants' Motion for Summary Judgment

to Permit Discovery to be Had." The Plaintiff maintained that he needed to conduct discovery to

obtain information that was essential to a full and competent opposition to the Defendants'

Motion for Summary Judgment. The Plaintiff stated that he needed admissible evidence that

W&A accessed his credit report and that Centurion did not possess a valid interest in the debt at

issue. The Plaintiff argued that the Defendants' summary judgment evidence that it owned the

debt, which consisted of a Bill of Sale showing that Jackson Capital transferred its rights and

interests in the debt to Centurion on April 29, 2005, did not prove that Jackson had any right or

interest to transfer and, thus, did not establish Centurion's ownership. On August 18, 2006, the

Defendants opposed the Plaintiff's motion for discovery and supported their motion for summary

judgment by submitting a supplemental affidavit with documents that evidenced the account's

full chain of title from Providian to, eventually, Centurion. The Defendants also conceded that

W&A obtained the Plaintiff's credit report on May 18, 2005, and July 13, 2005. The Defendants

argued that these submission obviated the need for any further discovery. Thereafter, the

Plaintiff moved to withdraw his Rule 56(f) motion, and on August 29, 2006, the Court

considered the motion withdrawn.

On August 8, 2006, the Plaintiff responded to the Motion to Dismiss and on August 18,

2006, the Defendants replied.

On August 23, 2006, the Plaintiff filed his own Motion for Partial Summary Judgment,

which the Defendants opposed on August 23. The Plaintiff also moved to strike certain evidence

filed by the Defendants in support of their Motion for Summary Judgment. On September 28, the Defendants opposed both motions and filed a reply in support of their own Motion for Summary Judgment. On October 10, the Plaintiff again moved to strike evidence. Specifically, the Plaintiff moved to strike a supplemental affidavit and attached exhibit, which he argued contradicted testimony contained in that affiant's previous affidavit. The Plaintiff also filed a reply to the response to his Motion for Partial Summary Judgment. On October 30, 2006, the Defendants responded with their arguments in support of admitting the supplemental affidavit that the Plaintiff had requested stricken.

On March 26, 2007, the Plaintiff requested that the Court rule on the pending motions [DE 44]. On May 30, the Plaintiff requested leave to file a Second Amended Complaint [DE 45]. The Plaintiff desires to amend his Complaint to include an allegation that W&A obtained his credit report after he initiated the suit, giving rise to another claim under the FCRA. He also submits that supplemental research reveals additional legal theories under which W&A may be liable, specifically, its failure to identify Centurion as the prospective or end user of his consumer report information. On June 13, the Defendants opposed the Plaintiff's motion to amend his complaint, arguing that because summary judgment had already been filed, the request should be considered unduly delayed and prejudicial. In addition, the Defendants argue that the proposed amendments are futile because they would not survive a motion for summary judgment. On June 21, 2007, the Plaintiff replied.

On June 28, 2007, the Plaintiff moved to consolidate this case with two other cases that he initiated since filing this suit: *Miller v. Experian Information Solutions, Inc.*, Cause No.: 1:07-CV-124; and *Miller v. Trans Union, LLC*, 1:07-CV-125. On July 11, the Defendant filed their

opposition to the motion to consolidate and on July 20, the Plaintiff replied. On August 28, 2007, the Court denied the Plaintiff's Motion to Consolidate and indicated that it was prepared to rule on the parties' dispositive motions.

On August 15, the Plaintiff filed a Rule 56(g) Motion for Sanctions Against Defendants Up To and Including Default Judgment in Favor of Plaintiff [DE 53]. In that Motion, the Plaintiff takes issue with affidavits filed by the Defendants in support of their claim that Centurion owned the debt at issue in this lawsuit. The Plaintiff claims that the Affidavits of Chad Joy and Tracie Kapalski "convey a deliberate, calculated misrepresentation of facts designed to prevent fair resolution of this case." (DE 53 at 4.) He requests default judgment in his favor. On August 27, 2007, the Defendants responded denying any false statements or bad faith and on August 27, the Plaintiff replied.

## JURISDICTION AND LEGAL STANDARD

The FDCPA provides for federal jurisdiction over claims made pursuant to the Act. *See* 15 U.S.C. § 1692k(d). The FCRA provides the same in 15 U.S.C. § 1681p. In addition, the Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367(a).

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party."

5

*Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (quotations and citations omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.

Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**STATEMENT OF FACTS**

Defendant W&A is a law firm with its main office in Rockville, Maryland. W&A regularly engages in the practice of collecting debts that are due to its clients. Defendant Centurion, which is also a Maryland corporation, purchases delinquent debts.

The Plaintiff defaulted on an account ending in 2720 that he had with Providian Bank. A Bill of Sale dated April 29, 2005, indicates that Jackson Capital Inc. transferred to Centurion all right, title, and interest in an account ending in 2720 in the name of Kevin Miller. Daniel J. Varner, a custodian of records for Centurion, provided an affidavit stating that the Bill of Sale was a business record made in the regular course of business at or near the time of the act or event or reasonably soon thereafter. In a separate affidavit, Varner also authenticated six different Bills of Sale assigning the right, title, and interest in and to charged-off accounts that were described in separate exhibits to the Bill of Sale documents. He asserted that these documents represent the full chain of title of the Plaintiff's Providian Bank credit account under the account number ending in 2720. Except for the final transfer from Jackson to Centurion, the exhibits referenced in the Bill of Sale documents are not included in the materials attached to Varner's affidavit. Noting this deficiency in the chain of title evidence, the Court directed the Defendants to supplement their submissions. Pursuant to this Court's Order, the Defendants supplemented Varner's affidavit with affidavits from officers and records custodians from various corporations. Using bill of sale records, these officers traced ownership of charged-off account 2720 in the Plaintiff's name from Providian to six different entities, eventually ending with the transfer from Jackson to Centurion on April 29, 2005.

On May 18, 2005, Centurion retained W&A as legal counsel to pursue the outstanding

obligation on account number 2720. (Abramson Aff. II, ¶ 4.)[1] On May 18, 2005, and again on

July 15, 2005, W&A obtained a copy of the Plaintiff's credit report. On June 3, 2005, W&A sent

the Plaintiff a demand letter disclosing his rights under the FDCPA to request verification of the

debt. On October 5, 2005, W&A sent a follow-up letter.

During this same time frame, the Plaintiff was involved in a state court action defending

a debt collection action filed by another debt collector, Melville Acquisitions Group (MAG). The

Plaintiff attached the following documents regarding the state court action to his Complaint in

this cause: (1) the complaint that MAG filed in the Allen Superior Court on February 4, 2005;

(2) an order granting MAG's motion for dismissal of the complaint, dated June 7, 2005; and (3) a

document entitled "Not for Public Access," dated the same date as the complaint, February 4,

2005. This last document stated that certain confidential information that was not for public

access was redacted from the complaint. The redacted information was a set of sixteen numbers

ending in 2720—an account number. The information had been redacted from Exhibit A to the

complaint, which was an affidavit from a MAG agent stating that Kevin Miller owed MAG

money on an account that it owned.


## ANALYSIS

In Counts I and II of the Amended Complaint, the Plaintiff asserts that the Defendants

violated the FDCPA by misrepresenting ownership of his Providian account. In Counts III, IV,

---

[1] In his first affidavit, Abramson indicated that Centurion retained W&A to pursue collection of the Plaintiff's account in June 2005. In his second affidavit, Abramson clarified that June 3, 2005, was the date that W&A sent out the initial collection letter, but that it was actually retained on May 18, 2005, as evidenced by W&A's internal system notes, which he attached to his affidavit. The Plaintiff has moved to strike Abramson's second affidavit and documents attached thereto as contradicting his first affidavit [DE 41]. The Court will address the motion to strike in more detail later in this Opinion.

V, and VI, the Plaintiff alleges that the Defendants willfully and negligently violated the FCRA

by accessing his credit report without a permissible purpose. In Counts VII and VIII, the Plaintiff

claims that the Defendants' acts constituted the tort of invasion of privacy. In Counts IX and X,

the Plaintiff asserts violations of Illinois statutes.

The Defendants argue that it is an undisputed fact that Centurion had lawful ownership of

the Plaintiff's debt and had a right to retain W&A as legal counsel to pursue recovery of the

debt. Summary judgment is therefore appropriate because they cannot be liable under the

FDCPA for making false statements and because they were permitted by the FCRA to access his

credit report.

The Plaintiff has opposed summary judgment and filed his own motion for summary

judgment with respect to his FCRA claims that W&A improperly accessed his credit report and

to his invasion of privacy claim. The Plaintiff also moved to strike part of the evidence the

Defendants relied on in support of their motion for summary judgment. Specifically, he argues

that the evidence that the Defendants contend establishes Centurion's ownership of the Providian

2720 account should be stricken. When the Defendants submitted additional affidavits and bills

of sale in support of Centurion's ownership of the account, the Plaintiff complained that two of

the affidavits contain false testimony. He has moved for default judgment as a sanction for the

purported fraudulent statements.


**A.      Motion to Strike Abramson's Affidavit**

The Plaintiff has moved to strike Abramson's second affidavit and documents attached

thereto as contradicting Abramson's first affidavit regarding the date that Centurion retained

10

W&A to pursue collection of the debt. He argues that a party may avoid summary judgment by submitting an affidavit that conflicts with prior sworn testimony in only a limited number of circumstances that are not present in this case. When a statement squarely contradicts an earlier one, the court must determine whether the statement creates a "sham issue of fact." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1170 (7th Cir. 1996). "It is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony." *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987).

Abramson's affidavit does not fall within this category of evidence. The supplemental affidavit was presented not to manufacture an issue of fact to avoid summary judgment, but to correct and clarify the date that W&A was first retained to recover Centurion's debt. Abramson offers appropriate explanations for the change—a mistake in his first affidavit. *See Commercial Underwriters Ins. Co. v. Aires Env't Servs., Ltd.*, 259 F.3d 792, 799 (7th Cir. 2001) (stating that courts will accept contradictory supplemental affidavit if the party offers a suitable explanation such as confusion, mistake, or lapse of memory for the discrepancy). Abramson explained in his supplemental affidavit that his reference in the first affidavit to June 2005 as the date Centurion retained W&A was actually the date W&A first attempted to contact the Plaintiff. He then explained that W&A's business records demonstrated that it was retained before this, on May 18, 2005.

The Plaintiff presents no evidence to suggest that W&A's records are not reliable and that Abramson did not simply make a mistake on the date he provided in his first affidavit, which he then corrected upon review of W&A's records. The Plaintiff's motion to strike Abramson's

11

affidavit [DE 41] is denied.

## B.      Fair Debt Collection Practices Act

The FDCPA was enacted in response to inadequate laws to redress injuries to consumers from abusive, deceptive, and unfair debt collection practices by debt collectors. 15 U.S.C. § 1692. The FDCPA broadly prohibits: (1) unfair or unconscionable collection methods, (2) conduct which harasses, oppresses, or abuses any debtor, and (3) any false, deceptive, or misleading statements in connection with the collection of a debt. 15 U.S.C. § 1692d–f. The FDCPA creates a private right of action against a debt collector. 15 U.S.C. § 1692k.

### 1.      *The Plaintiff's Claims*

The Plaintiff contends that the Defendants violated § 1692e, 1692e(2)(A), and 1692e(10) when they falsely represented that Centurion owned the debt previously owed to Providian. Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute enumerates a non-exhaustive list of specific practices that are per se "false or misleading." *Id.* The example provided in § 1692e(2)(A) refers to the false representation of the "character, amount, or legal status" of a debt. *Id.* § 1692e(2)(A). Section 1692e(10) prohibits a debt collector from using any "false representation or deceptive means to collect or attempt to collect" a debt. *Id.* § 1692e(10). The Plaintiff also alleges that the Defendants violated § 1692e(5) when it threatened to take action that it could not legally take because it did not have ownership. *Id.* § 1692e(5) (prohibiting the "threat to take any action that cannot legally be taken

or that is not intended to be taken").

Debt collectors are strictly liable for even unintentional false statements. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004); *Turner v. J.V.D.B. Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (stating that "[t]his circuit has held that '§ 1692e applies even when a false representation was unintentional'" (quoting *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000)). However, a debt collector may escape liability if it can demonstrate by a preponderance of the evidence that its "violation [of the Act] was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

The Plaintiff also claims that the Defendants' conduct constituted an unfair or unconscionable means to collect or attempt to collect a debt in violation of § 1692f. Section 1692f, like § 1692e, states a general prohibition against using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The provision then lists eight specific violations "without limiting the general application" of the statute. *Id.*

The Defendants argue that they are entitled to summary judgment because it is an undisputed fact that Centurion had lawful ownership of the Plaintiff's debt. The Plaintiff contends that a genuine issue of fact exists concerning whether his debt was assigned to Centurion because another debt collector was attempting to collect money from him at the same time on the same account. Given the strict liability the act imposes on debt collectors for false statements, the Defendants' motion for summary judgment on the FDCPA claims turns on whether the Plaintiff has presented factual allegations that would lead a rational trier of fact to find for him—that is, to find that Centurion did not own the debt that it attempted to collect. *See*

*Anderson v. Liberty Lobby*, 477 U.S. at 249.

**2.      *Ownership of the Plaintiff's Charged-off Providian Account***

a.      *The Defendants' Evidence of Ownership*

The evidence that Centurion initially submitted as evidence that it owned the debt consisted of bills of sale that were authenticated through the affidavit of Varner, a custodian of records for Centurion. The Plaintiff challenged the admissibility of the bills of sale on grounds that they do not reference the Plaintiff or account number 2720 and they contain inadmissible hearsay. In supplemental filings, the Defendants provided the affidavit of the new Centurion officer who had reviewed Varner's affidavit and Centurion's business records, kept in the ordinary course of its operations. The Defendants also provided the affidavits of five other officers of the various entities through which account 2720 had been transferred before finally being sold to Centurion. Each officer testified that he or she had access or supervision over the business records kept in the ordinary course of the relevant business's operations. Each officer also specifically referenced account 2720 originating from Providian and owned by Kevin D. Miller.

Jill Pulliam, an officer of the successor company to Providian, stated that on June 20, 2003, Providian assigned all of the rights, title, and interest in and to the credit card account originating from Providian and owned by the Plaintiff to Vision Management Services. Chad Joy, an officer of Great Seneca Financial Corporation testified that on June 23, 2003, it received the right, title, and interest in and to this same account from Vision Management Services and on July 21, 2004, assigned it to Account Management Services. Joy's affidavit referenced and

attached two exhibits: an Assignment and Bill of Sale dated June 23, 2003, between Vision

Management Services and Great Seneca Financial; and an Assignment and Bill of Sale dated

July 21, 2004, between Great Seneca and Account Management Services. Traci Kapalski, an

officer of the company formerly known as Account Management Services, testified that Great

Seneca assigned its interests in the Providian account owned by the Plaintiff and ending in 2720

to it on July 21, 2004, and referenced the same Bill of Sale identified by Joy. Kapalski also

stated that on November 19, 2004, it assigned the interest in the account to Madison Street

Investments and referred to a November 19, 2004, Assignment and Bill of Sale between the two

entities. The officer for Madison Street Investments, Kevin Emmerich, provided affidavit

testimony that Madison Street received the rights, title and interest to the Plaintiff's account on

November 19, 2004, and assigned that right to Jackson Capital on April 29, 2005. The Bill of

Sale for the November 19 transaction was attached. The officer of Jackson Capital, Samuel

Tuchman, verified in his affidavit that Jackson Capital was assigned this right on April 29, 2005,

and on this same date, assigned all of its rights, title, and interest in and to the Providian account

to Centurion. Tuchman referenced the Bill of Sale between Madison Street as the seller and

Jackson as the buyer and the Bill of Sale between Jackson as the seller and Centurion as the

buyer.

     These Affidavits and the attached Assignments and Bills of Sale are admissible to

establish Centurion's ownership of Providian account 2720 owned by the Plaintiff. Generally,

documents prepared in the normal course of business are excluded by the hearsay rule and are

admissible to prove the matters asserted therein. Fed. R. Evid. 803(6).

     A memorandum, report, record, or data compilation, in any form, of acts, events,
     conditions, opinions, or diagnoses, made at or near the time by, or from

15

> information transmitted by, a person with knowledge, if kept in the course of a
> regularly conducted business activity, and if it was the regular practice of that
> business activity to make the memorandum, report, record or data compilation, all
> as shown by the testimony of the custodian or other qualified witness.

*Id.* A document is admissible as a business record under Rule 803(6) if: "1) the acts recorded

therein were reported by a person with knowledge, 2) it was the regular practice of the [business]

as a regularly conducted business activity to record such acts, 3) the acts were recorded at or

near the time of their occurrence, and 4) the documents are properly authenticated 'unless the

source of information or the method or circumstances of preparation indicate lack of

trustworthiness.'" *Wheeler v. Sims*, 951 F.2d 796, 802 (7th Cir. 1992) (footnote omitted).

> A party establishes a foundation for admission of business records when it
> demonstrates through the testimony of a qualified witness that the records were
> kept in the course of a regularly conducted business activity, and that it was the
> regular practice of that business to make such records. *See Collins v. Kibort*, 143
> F.3d 331, 337 (7th Cir. 1998), citing *United States v. Briscoe*, 896 F.2d 1476,
> 1494 (7th Cir. 1990). A qualified witness does not need to be the person who
> prepared the records or have personal knowledge of the information contained,
> but the witness must have knowledge of the procedure by which the records were
> created. *See id.*

*United States v. Given*, 164 F.3d 389, 394 (7th Cir. 1999).

Each bill of sale is admissible as a business record kept in the ordinary course of a debt

collector's business to buy and sell delinquent accounts. Each instrument was signed on or near

the date that the sale was executed and each was authenticated by an officer of the company who

is familiar with the documents that are executed for such a transaction. The Plaintiff's motion to

strike [DE 34] the chain of title evidence on hearsay grounds is denied.

b.      *The Plaintiff's Motion for Sanctions and Dispute of Chain of Title Affidavits*

The Plaintiff's Rule 56(g) motion for sanctions [DE 53], which challenges the veracity of

16

two of the chain of title affidavits, is also denied. Rule 56(g) provides:

> (g) **Affidavits Made in Bad Faith**. Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Fed. R. Civ. P. 56(g). The Plaintiff claims that the Affidavits of Chad Joy and Tracie Kapalski "convey a deliberate, calculated misrepresentation of facts designed to prevent fair resolution of this case." (DE 53 at 4.)

The Plaintiff concludes that Joy and Kapalski must be lying that his debt was assigned from Great Seneca Financial Corporation to Account Management Services on July 21, 2004, because a copy of his consumer report from Experian indicates that AMS obtained his consumer report information on April 19, 2004, three months before the purported transfer of account 2720 to AMS. He contends that Joy and Kapalski fabricated their testimony to match the dates shown on GSF's Bill of Sale.

While the Plaintiff's evidence shows that Account Management Services accessed his report before owning account 2720, it does not establish that Account Management Services did not own the debt on July 21, 2004, just as the parties testified. The Plaintiff's Experian report is not inconsistent with the chain of title documents because it does not reveal Account Management Services's purposes for accessing the report. As the Defendants note, Account Management Services may have accessed the report for a purpose completely unrelated to account 2720. In any event, whether Account Management Services's purpose was lawful or not is immaterial to this suit and the issues regarding Centurion and account 2720.

17

In sum, the Plaintiff's evidence does not counter the Defendants' chain of title evidence and it does not show that the affidavits were presented in bad faith or solely for the purpose of delay. The Plaintiff's request for sanctions, including default judgment, is not appropriate or justified.

c.       *Contemporaneous Lawsuit in State Court for Collection of 2720 Account*

The Plaintiff asserts that he has evidence that conflicts with Centurion's claim of ownership: a different debt collector, MAG, filed a complaint against the Plaintiff in Allen Superior Court in February 2005 to collect the debt on the same Providian account that Centurion hired W&A to collect. MAG dismissed its suit in June 2005. The Defendants argue that the "state court action referenced in Plaintiff's Statement of Genuine Issues does not contain any document referencing this account." (DE 39 at 2.) But the Defendants are wrong on this point. The exhibit attached to the state court complaint contained an account number that was identified in a separate, non-public, document used by the state court to identify redacted information. The redacted information was identified as a twelve numbers ending in 2720, the ending numbers of the Plaintiff's Providian account.

In determining whether this evidence of another lawsuit creates a genuine issue, the Court "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254. The nonmovant must produce some proof to establish the existence of the elements that are essential to his case and on which he will bear the burden of proof at trial in order to withstand a motion for summary judgment. *Celotex Corp.*, 477 U.S. at 322. When determining whether factual issues exist, the court must view all evidence in the light

18

most favorable to the nonmoving party, and draw all inferences in the nonmovant's favor. *Wolf v. Buss*, 77 F.3d 914, 918 (7th Cir. 1996).

The reasonable inference from the Plaintiff's evidence is that MAG filed a lawsuit to collect money due on the same account to which Centurion claimed ownership. However, the fact that MAG filed suit does not create a genuine issue of fact regarding Centurion's assignment of the debt because it is not evidence that MAG actually owned the account (any more than Centurion's demand letters prove its ownership). MAG could have been mistaken. It could have even filed suit knowing that it was not the true owner. The Court is not aware, through the record in this case, of the reason MAG moved to dismiss the state court action. "An invitation to speculate does not create a genuine factual issue." *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1152 (7th Cir. 1989).

On the other hand, the Defendants have presented undisputed evidence that affirmatively shows Centurion's ownership of the account on April 29, 2005. If Centurion had not presented evidence establishing its ownership of the Plaintiff's account, the possibility would have remained that another company owned it, particularly in light of MAG's actions. However, given the business records submitted by the Defendants, the Plaintiff has not presented sufficient evidence to refute the fact of Centurion's ownership. The Defendants are entitled to summary judgement on the Plaintiff's claims that they violated the FDCPA by making misleading statements of ownership.

## C.      Fair Credit Reporting Act

The Plaintiff alleges in Counts III, IV, V, and VI, of his Amended Complaint that W&A

and Centurion willfully or negligently obtained his credit report in violation of the FCRA. The Plaintiff admits that W&A was acting within the scope of its employment as a legal representative on behalf of Centurion. However, he contends that because the Providian debt was not assigned to Centurion, it, and by extension W&A, had no permissible purpose to access his credit history.

Under the FCRA, a person must have a permissible purpose for obtaining a consumer report. *See* 15 U.S.C. § 1681b(f). Permissible purposes are set forth in 15 U.S.C. § 1681b. A consumer reporting agency may furnish a consumer report to a person it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A); *Phillips v. Grendahl*, 312 F.3d 357, 366 (7th Cir. 2002) (describing purpose under § 1681b(a)(3)(A) as "in other words, debt collection").

It is undisputed that Centurion retained W&A on May 18, 2005, as legal counsel to collect the outstanding debt on the 2720 Providian credit account, the interest to which it had been assigned on April 29, 2005. On May 18 and July 15, W&A obtained copies of the Plaintiff's credit report in connection with its collection efforts. Therefore, the Defendants are entitled to summary judgment on the Plaintiff's claims that W&A violated the FCRA when it accessed his credit report without a permissible purpose.

### D.    Motion to Amend Complaint

The Plaintiff's Motion to Amend relates to his claims under the FCRA. The Plaintiff

requests leave to amend his Complaint to include the fact that W&A obtained his credit report, not only on those dates alleged in his original Complaint, but also on April 11, 2007, after he initiated the suit. He states that this gives rise to another claim under the FCRA. The Plaintiff acknowledges that this amendment may have been more appropriately fashioned as a supplement under Rule 15(d), but notes that the standard for an amendment and a supplement are the same. The Plaintiff also seeks to add new theories of liability that are the result of additional legal research. Specifically, he claims that W&A's failure to identify Centurion as the prospective or end user of his consumer report information violated §§ 1681b(f)(2), 1681e(1)(A), and 1681q of the FCRA.

The Defendants assert that, in addition to being untimely, the motion to amend should be denied because the proposed amendments have no merit and would be dismissed on a motion for summary judgment. The Court agrees that the proposed amendments are without merit. *See Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (citing "futility of the amendment" as one of the grounds where it is inappropriate to grant leave to amend under Rule 15(a)).

The Court has already determined that W&A accessed the Plaintiff's credit report for a permissible purpose under the FCRA. Therefore, the fact that they accessed it a third time does not state a legally viable claim.

The Plaintiff's additional theory of recovery is also without merit. The Plaintiff argues that—because the FCRA requires consumer reporting agencies to identify to consumers, upon request, the prospective or end users of their consumer report information—those who obtain the report must certify the users and uses of the information. The Plaintiff contends that because W&A obtained his report on behalf of Centurion, it was required to identify Centurion as the end

user of the information. He alleges that W&A's failure to identify Centurion to Trans Union, the credit reporting agency, when it accessed his report violated §§1681b(f)(2), 1681e(e)(1)(A) and 1681q.

The section that the Plaintiff relies on, § 1681e(e), governs the procurement of a consumer report "for resale." 15 U.S.C. § 1681e(e). "A person may not procure a consumer report for purposes of reselling the report (or any information in the report) unless the person discloses to the consumer reporting agency that originally furnished the report the identity of the end user of the report (or information)." *Id.* § 1681e(e)(1)(A). Because the statute only imposes a duty to disclose an end user on those who procure the report for purposes of reselling it and W&A is not a reseller, the Plaintiff's claim fails to set forth a viable legal theory. The FRCA provides the definition of reseller as,

> a consumer reporting agency that—
> (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and
> (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

15 U.S.C. § 1681a(u). In turn, a "consumer reporting agency" is

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*Id.* § 1681a(f). The Plaintiff's proposed Second Amended Complaint does not identify W&A as a "reseller" or a "consumer reporting agency." Even if it did, this legal conclusion would carry no weight, as W&A, acting on behalf of Centurion to collect a debt on an account it owned, does

not meet these statutory definitions.

Because the Plaintiff's claims that W&A violated §1681b(f)(2) (requiring a prospective user of a consumer report to certify the purpose in accordance with § 1681e) and § 1681q (setting forth criminal penalties for using false pretenses to obtain consumer report information) are premised on the conclusion that W&A was required to disclose Centurion as an end user, they are also futile, and the Plaintiff will not be granted leave to amend his complaint to include these claims.[2]

## E.       State Law Claims

In Counts VII and VIII of his Amended Complaint, the Plaintiff claims that on May 18 and July 13, 2005, W&A, acting on behalf of Centurion, intentionally intruded upon his privacy interests when it unlawfully obtained his credit report "in an attempt to defraud him into paying to Centurion a debt which it had not been assigned." (Am. Compl., ¶ 22.) The Plaintiff has also asserted claims in Counts IX and X his Complaint under the Illinois Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act. The Plaintiff asserts that jurisdiction is proper pursuant to 28 U.S.C. § 1367(a).

The federal statute that allows supplemental jurisdiction of state law claims also provides that the district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which is has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (noting that the "usual practice" in this circuit is

---

[2] In addition, because §§ 1681b(f) and 1681n already impose civil liability for obtaining a consumer report knowingly without a permissible purpose, it is not necessary to cite § 1681q, the criminal liability statute. *See Phillips v. Grendahl*, 312 F.3d 357, 364 (7th Cir. 2002) (stating that the plaintiff's reliance on § 1681q for civil liability was "anachronistic and unnecessary" in light of the 1996 amendments to the FCRA).

to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed before trial).

In this case, the Court declines to exercise jurisdiction over the Plaintiff's Illinois statutory claims and invasion of privacy claim and they are dismissed without prejudice. This dismissal renders moot the Defendants' Motion to Dismiss Counts IX and X of the Amended Complaint [DE 16], the portion of the Defendants' Motion for Summary Judgment [DE 18] that seeks judgment on the invasion of privacy claim, and the portion of the Plaintiff's Motion for Partial Summary Judgment [DE 30] that requests judgment on the state law claims.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [DE 18] is GRANTED IN PART and RENDERED MOOT IN PART. The Plaintiff's Motions to Strike [DE 34, 41] and for Leave to File Second Amended Complaint [DE 45] are DENIED. The Defendants' Motion to Dismiss [DE 16] and the Plaintiff's Motion to Expedite [DE 44] are RENDERED MOOT. The Plaintiff's Motion for Partial Summary Judgment [DE 30] is DENIED IN PART and RENDERED MOOT IN PART. The Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE. The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on September 7, 2007.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

24